UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CRISTIAN R.,** | Civil Action No. 19-20861 (SDW) |
| Petitioner, | |
| v. | OPINION |
| **THOMAS R. DECKER, et al.,** | |
| Respondents. | |

**WIGENTON,** District Judge:

Presently before the Court is the third amended petition for a writ of habeas corpus of Petitioner, Christian R., filed pursuant to 28 U.S.C. § 2241. (ECF No. 52). Also before the Court are Petitioner's motions to expedite (ECF No. 43) and seeking a temporary restraining order. (ECF No. 51). The Government has filed responses to the petition and motions (ECF Nos. 54-55), to which Petitioner has replied. (ECF No. 56). For the following reasons, Petitioner's habeas petition is granted in part only to the extent that Petitioner shall receive a bond hearing, and Petitioner's motions are denied as moot in light of this Court's final decision in this matter.

**I. BACKGROUND**

Petitioner is a native and citizen of Ecuador who entered the Untied States at an unknown time and place prior to September 2000. (Document 1 attached to ECF No. 55 at 3). On September 27, 2000, Petitioner became a lawful permanent resident. (*Id.*). Petitioner is thirty-two years of age and suffers from moderate asthma, for which he apparently has an inhaler. (ECF No. 52 at 2; Document 2 attached to ECF No. 56 at 2; Document 3 attached to ECF No. 56 at 5). In September 2018, Petitioner was convicted of conspiracy to distribute Ethylone in violation of 21 U.S.C. §§

846 and 841(b)(1)(C) in the Southern District of New York. (*Id.*). Following Petitioner's release from detention on that charge, Petitioner was taken into mandatory immigration detention pursuant to 8 U.S.C. § 1226(c) on February 14, 2019. (*Id.*). Petitioner was thereafter placed in removal proceedings which concluded when Petitioner was ordered removed on October 1, 2019. (Document 3 attached to ECF No. 41 at 2). Petitioner filed an appeal to the Board of Immigration Appeals on October 15, 2019. (*Id.*). On March 30, 2020, however, Petitioner withdrew his appeal through a motion filed with the Board. (Document 9 attached to ECF No. 52 at 2-4).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

### B. Analysis

In his chief habeas claim and in his motion seeking a temporary restraining order, Petitioner contends that he should be entitled to immediate release from immigration detention because he

believes that the jail in which he is detained has not sufficiently protected him from COVID-19 in light of his asthma. As this Court recently explained, assuming the COVID-19 pandemic is a sufficiently severe circumstance that would warrant permitting a habeas claim based upon Petitioner's conditions of confinement, such a claim

> could be construed in two fashions – as a claim asserting that the jail has been deliberate indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under these types of claims, *see, e.g,*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL 1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).
>
> Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a

sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthama] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainees subjective dissatisfaction or disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

. . . .

. . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest

> will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

*Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020).

The evidence submitted in this matter clearly indicates that the jail in which Petitioner is housed has taken significant, concrete steps towards alleviating the risk the COVID-19 virus poses to immigration detainees, including Petitioner. Since mid-March, the facility has suspended taking in further ICE detainees and has subjected all new criminal detainees to both medical screening and isolation in the event that symptoms of the virus are shown. (Document 6 attached to ECF No. 55 at 2). The facility has also suspended visitation and limited attorney visits to indirect contact separated by a glass partition. (*Id.*). Employees are subjected to medical screenings and temperature checks, and all are required to wear masks. (*Id.*). Social visits have also been curtailed, and through limiting time spent outside of dual occupancy cells, the facility is doing what it can to allow social distancing. (*Id.* at 2-3). Inmates who complain of sickness are being screened as needed and those exhibiting signs or symptoms are transported to the hospital for testing, and those who are positive for the virus are housed in a separate unit. (*Id.* at 3). These quarantined inmates are housed in single cells and are kept at a significant distance from other detainees. (*Id.* at 4). Those who have been exposed to positive individuals who do not have symptoms are cohorted in a separate unit for fourteen days of observation. (*Id.*). The facility has also increased its cleaning efforts , including providing soap, sanitizer, and disinfectant in every housing unit, and provided surgical masks for all detainees and inmates. (*Id.* at 4-5). Based on

these and the other significant steps that the jail has taken to alleviate virus exposure for detainees, it is clear that the facility has not been deliberately indifferent to Petitioner's needs. Likewise, given these steps, including the issuance of masks and increased cleaning supplies as well as providing as much space for distancing as can reasonably provided, the jail's conditions do not mount to punishment, and the jail has sufficiently alleviated any deprivation Petitioner may have faced. Petitioner has thus failed to show that the jail and its employees have been deliberately indifferent to his needs, nor has he shown that he has been subjected to undue punishment. Petitioner is therefore not entitled to release, and his claim seeking such release based on COVID-19 is denied.

In his previous petitions and in his reply, Petitioner also contends that he should be provided a bond hearing as his detention in the absence of a bond hearing has become prolonged. In order to evaluate this claim, this Court must first address the statutory basis for Petitioner's detention. While Petitioner was originally detained under 8 U.S.C. § 1226(c), when he withdrew his appeal of his removal order at the BIA level, Petitioner's October 1, 2019, removal order became administratively final "to the same extent as if no appeal had been taken."[1] 8 C.F.R. § 1003.4. Thus, Petitioner is detained pursuant to a final order of removal, which is treated as if it

---

[1] The Government contends that Petitioner will not be detained under § 1231(a) until the Board formally accepts the withdrawal motion and dismisses Petitioner's appeal. While this is technically correct, the dismissal of Petitioner's appeal is essentially a foregone conclusion that is simply waiting the stamp of approval of the Board. Were this Court to formalistically require Petitioner's withdrawal to be granted before considering him to be a § 1231 detainee, Petitioner would be caught in a sort of no-man's land – any bond hearing granted under § 1226(c) would become moot as soon as Petitioner shifted detention statutes, and the likelihood of that occurring before the bond hearing could be held is significant. Given the fact that the Board's grant of the withdrawal is essentially guaranteed, and the applicable regulations require that Petitioner's order be retroactively considered final as of the date of the issuance of Petitioner's removal order – which was more than six months ago – this Court, in the interests of justice, will construe Petitioner's withdrawal motion to be sufficient to render his order of removal final as of October 1 and will consider Petitioner to be detained under § 1231(a).

became final as of October 1, 2019, and he is therefore detained pursuant to 8 U.S.C. § 1231(a). *See, e.g., Jennings v. Rodriguez*, --- U.S. ---, 138 S. Ct. 830, 843 (2018). Once an alien is subject to an administratively final order of removal, the Government is required to detain him for a period of ninety days, after which it may continue to detain him without being subject to a general habeas challenge for a further ninety days for a total of six months of presumptively reasonable detention. *Id.* The Third Circuit, however, has held that an alien who has been held under § 1231(a) beyond the six month presumptively reasonable period will be entitled to a bond hearing at which the Government will bear the burden of proving that Petitioner is either a flight risk or a danger to the community unless the Government presents evidence which suggests that Petitioner's removal is likely in the immediate future. *See Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 225-26 (3d Cir. 2018). As Petitioner is detained pursuant to § 1231(a) and his six month presumptively reasonable period has elapsed, as the Government has not provided evidence clearly indicating that Petitioner will be removed in the immediate future, and as the Government has stated in its briefing that it does not oppose the granting of a bond hearing, this Court finds that a bond hearing pursuant to *Guerrero-Sanchez* is warranted. Petitioner's habeas petition shall therefore be granted solely to the extent that he shall be provided a bond hearing pursuant to *Guerrero-Sanchez* within ten days. Petitioner's remaining motions are denied as moot in light of the Court's entering this final decision as to Petitioner's habeas petition.

### III. CONCLUSION

For the reasons expressed above, Petitioner's third amended habeas petition (ECF No. 52) is GRANTED IN PART solely to the extent that Petitioner is granted a bond hearing pursuant to *Guerrero-Sanchez* within ten days, is DENIED IN PART as to Petitioner's remaining requests for

outright release, and Petitioner's motions (ECF Nos. 43, 51) are DENIED as moot.  An appropriate order follows.

Dated: April 28, 2020                              *s/ Susan D. Wigenton*
                                                                   Hon. Susan D. Wigenton,
                                                                   United States District Judge